IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>MABELLE DE LA ROSA DANN,<br><br>      Defendant.               / | No. C 08-00390 CW<br><br>ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL AND MOTION FOR JUDGMENT OF ACQUITTAL |

On October 8, 2009, a jury convicted Defendant Mabelle de la Rosa Dann on all five counts in the superseding indictment: conspiracy to commit visa fraud (count one), visa fraud (count two), forced labor (count three), unlawful conduct regarding documents in furtherance of servitude (count four), and harboring an illegal alien for the purpose of private financial gain (count five). At the close of the government's case-in-chief, Defendant orally moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The Court allowed all counts in the indictment to proceed to the jury. Defendant now moves for a judgment of acquittal as to counts three, four and five, arguing

that the evidence presented did not support verdicts on these claims.  Defendant also moves to vacate the judgment of conviction and for a new trial under Federal Rule of Criminal Procedure 33.

## DISCUSSION

### I. Sufficient Evidence To Support The Jury Verdict

Federal Rule of Criminal Procedure 29 allows Defendant to challenge the sufficiency of the evidence underlying a conviction. The question the court must address is whether, "viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>United States v. Herrera-Gonzalez</u>, 263 F.3d 1092, 1095 (9th Cir.2001) (emphasis in original and citations and internal quotation marks omitted).

As noted above, Defendant challenges counts three through five of her conviction.  The Court addresses each count in turn.

#### A. Count Three: Forced Labor (18 U.S.C. § 1589)

The Court instructed the jury on the forced labor count as follows:

> The third crime Ms. Dann is charged with is obtaining forced labor in violation of Section 1589 of Title 18 of the United States Code.  In order for Ms. Dann to be found guilty of that charge, the government must prove each of the following three elements beyond a reasonable doubt:
> First, Ms. Dann obtained or attempted to obtain the labor or services of Ms. Pena Canal.  The word "obtain" means to acquire, to procure or to succeed in gaining the possession of something as a result of some plan, endeavor or general course.  The word "labor" means work or the performance of any particular task or set of tasks, and it includes any form of physical or mental effort or exertion to perform such work or tasks.  The word "services" means any conduct, work or duty performed for the benefit of another person or thing.
> Second, if you find that Ms. Dann obtained the labor or services of Ms. Pena Canal, then you must determine whether she did so by means of a scheme, plan, or pattern

>intended to cause Ms. Pena Canal to believe that, if she did not perform such labor or services, that she or another person would suffer serious harm.
>
>The term "serious harm" means any harm, whether physical or non-physical harm, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.
>
>In determining whether a particular type or certain degree of harm or coercion was sufficient to obtain Ms. Pena Canal's labor or services, you should consider Ms. Pena Canal's individual circumstances, including her age, intelligence, education, experience, background, social isolation, social status, any inequalities between Ms. Pena Canal and Ms. Dann and any reasonable means of escape or terminating the relationship.
>
>The third element of the crime is that Ms. Dann acted knowingly. As defined above, an act was done "knowingly" if Ms. Dann was aware of the act and did not act through ignorance, mistake or accident.[1]

Thus, in order for Defendant to be found guilty of forced labor, the government had to prove that she obtained or attempted to obtain Ms. Pena Canal's labor or services by prohibited means and that she acted knowingly.

Defendant argues that the government did not provide sufficient evidence of the second element of forced labor, that Ms. Pena Cana would suffer "serious harm" if she did not continue to work for Defendant. The government claims that it presented two forms of such serious harm: financial and reputational.

### 1. Serious Financial Harm

The government argues that Defendant led Ms. Pena Canal to

---

[1] Knowingly was defined by the Court in the jury instructions as follows: "An act was done knowingly if Ms. Dann was aware of the act and did not act through ignorance, mistake, or accident. The government is not required to prove that Ms. Dann knew that her acts or omissions were unlawful. You may consider evidence of Ms. Dann's words, acts, or omissions, along with all the other evidence, in deciding whether she acted knowingly."

3

believe that she would suffer the serious financial harm of losing the wages she had earned, but not received. It is undisputed that Defendant never paid Ms Canal for her work. In January, 2007, in addition to failing to pay Ms. Pena Canal for her work, Defendant began telling Ms. Pena Canal that she owed Defendant a debt of $15,000 for all of the expenses Defendant accrued on Ms. Pena Canal's behalf. This is a significant amount of money to owe an employer, but is especially considerable when compared to the Peruvian minimum wage that she was more familiar with -- $150 per month. In addition, Defendant required Ms. Pena Canal to sign a note in March, 2008, which contained a false acknowledgment that she received payment for her work. In full, the note states

> I, Zoraida Pena, have received from Ms. Mabelle Dann the minimum wage in the State of California starting on July 27th, 2007, for the care of her children [names omitted] from 7:00 a.m. to 8:00 a.m. and from the time they arrive home from school at 2:30 to 6:00 p.m. In addition, I receive lodging. I occupy the entire living room for a value of $500 in rent. And food, breakfast, lunch, food [sic] and dinner every day.
> In addition to this, I have received some clothes items and gifts from members of Mabelle's family. Perfumes, clothes items, shoes, jackets, pants, et cetera. I have received a yearly total of $10,200.

Trial Exh. 30-T.[2] Defendant must have thought this document was important because she kept it protected in a plastic sleeve in a binder that she kept in her room.

The jury could make three reasonable inferences from this note when considered in conjunction with Defendant's false promises to pay Ms. Pena Canal and the debt Defendant imposed on Ms. Pena Canal: (1) Defendant had no intention of paying Ms. Pena Canal,

---

[2] This note was originally written in Spanish. The English translation was agreed upon by the parties.

4

(2) Defendant had a consciousness of guilt for not paying Ms. Pena Canal so she wanted to preserve the note to guard against any possible future charges and (3) Defendant wanted Ms. Pena Canal to be aware that Defendant would keep this note to deter her from trying to enforce her rights.  Taken together, sufficient evidence existed for a rational trier of fact to conclude that Defendant knowingly intended to make Ms. Pena Canal believe that, if she discontinued working for Defendant, she would suffer serious financial harm.

### 2. Serious Reputational Harm

Sufficient evidence also supports the government's theory that Ms. Pena Canal continued to work for Defendant to avoid serious harm to her reputation.  Ms. Pena Canal testified that Defendant repeatedly threatened to tell others that Ms. Pena Canal stole from her if Ms. Pena Canal left.  Although it is not clear whether Defendant specifically told Ms. Pena Canal that she would report her to the police and immigration authorities, it is reasonable to believe that accusing her of a crime implied a threat to report her to law enforcement authorities.  Further, when Ms. Pena Canal finally left Defendant's employ, Defendant did publicly falsely accuse Ms. Canal of theft, in the office of Defendant's children's school.  The testimony of Ms. Soto and Ms. Lallagher, two individuals present at the school when Defendant made her accusation, supports this claim.  They testified that when Defendant learned that Ms. Pena Canal had left, Defendant announced that Ms. Pena Canal "took everything," including Defendant's money, jewelry and keys.  Given these facts and Ms. Pena Canal's lack of English language skills and her illegal status, a rational jury

1  could reasonably conclude that she was fearful of defending herself
2  against Defendant's accusations.
3      Ms. Pena Canal's actions immediately after leaving Defendant's
4  employ also demonstrate her fear of serious reputational harm.
5  After she left, she wrote the following letter to Defendant:

> Mrs.:
>
> Mabell [sic] De la Rosa Dann
>
> On today's date I'm delivering to the office at Indian Valley this key in a duly sealed envelope.  Your children are safe at the school.
>
> I'm leaving after having worked for 2 years, the period of time that you did not pay for my work, claiming that it was the debt for my fare.
>
> I have felt mistreated and abused by you.  I'm not taking along my clothing or any of your belongings.
>
> I need for you to please bring my passport and my D.N.I. (Peruvian Identification) to the school in a sealed envelope; I asked Linda the secretary to keep for me the package that you will deliver on Friday April 17, 2008; I will pick it up.
>
> Also that you close the account at Washinton [sic] Mutual. I don't have a Bank passbook or any information on the amount of money there is.
>
> In the event that you do not want to give me my documents, I will be forced to deliver a copy of this letter to the appropriate authorities.
>
> Sincerely,
>
> Zoraida Pena

Exhibit 31T.[3]

   This letter is strong evidence of Ms. Pena Canal's state of mind soon after leaving Defendant.  She emphasized the fact that, after leaving her place of work and residence of two years, she did

---

[3] This letter was originally written in Spanish.  The English translation was agreed upon by the parties.

6

United States District Court
For the Northern District of California

not take any of her own belongings or Defendant's belongings with her. She arranged her escape in such a way that witnesses could observe that she brought nothing with her, not even her own extra clothes. The only items she wanted from Defendant were her own passport and Peruvian identification. And, she made sure to return to Defendant, in front of a witness, her only possession of Defendant's -- a key to Defendant's house.

In sum, on a separate basis of reputational harm, a rational trier of fact could find beyond a reasonable doubt that Defendant forced Ms. Pena Canal to continue to work for her by threatening to damage her reputation.

II.  Count Four: Use of Documents in Servitude (18 U.S.C. § 1592)

Defendant was convicted of unlawful conduct regarding documents in furtherance of servitude in violation of Section 1592 of Title 18 of the United States Code. According to the jury's verdict, the government proved each of the following three elements beyond a reasonable doubt:

> First, Ms. Dann concealed, removed, confiscated or possessed Ms. Pena Canal's passport or other immigration document or government identification document.
> Second, such act or acts were undertaken in the course of committing or with the intent to commit the crime of forced labor.
> And third, that Ms. Dann acted knowingly in doing such act or acts. As defined above, an act was done "knowingly" if Ms. Dann was aware of the act and did not act through ignorance, mistake or accident.

Final Jury Instructions at 12.

There is sufficient evidence that Defendant possessed and concealed Ms. Pena Canal's passport and Peruvian identification. Although Defendant told Officer Roher that she did not have Ms. Pena Canal's papers, Special Agent Schuffle testified that he found

7

Ms. Pena Canal's papers in a night stand by Defendant's bed. Also, as described above, in the letter that Ms. Pena Canal left for Defendant at the school on April 16, 2008, she asked Defendant to return her papers to her. If Ms. Pena Canal had access to these papers in Defendant's apartment, surely she would have brought them with her when she escaped. Although Defendant received this letter, she never gave Ms. Pena Canal the papers.

There is sufficient evidence that Defendant possessed and concealed Ms. Pena Canal's papers in order to commit the crime of forced labor. Ms. Pena Canal testified that Defendant repeatedly told her that if she was unhappy or wanted to quit, Defendant could "send her back to Peru." Given these comments and the fact that Defendant knew about Ms. Pena Canal's illegal status and possessed her identification papers, a reasonable person could infer that Defendant knowingly possessed Ms. Pena Canal's papers in order to commit the crime of forced labor. Thus, sufficient evidence supports the jury's verdict on this count.

III. Count Five: Harboring an Illegal Alien for Private Financial Gain (8 U.S.C. §§ 1324(a)(1)(A)(iii) and (B)(I))

The jury was instructed as to the elements of this charge as follows:

> First, Ms. Pena Canal was an alien;
> Second, Ms. Pena Canal had come to, entered or remained unlawfully in the United States;
> Third, Ms. Dann knew or was in reckless disregard of the fact that Ms. Pena Canal had come to, entered, or remained unlawfully in the United States;
> Fourth, Ms. Dann concealed, harbored or shielded Ms. Pena Canal for the purpose of avoiding Ms. Pena Canal's detection by immigration authorities; and
> Fifth, Ms. Dann concealed, harbored or shielded Ms. Pena Canal for the purpose of private financial gain.

Final Jury Instructions at 12. Defendant challenges the fourth

8

element.  Undisputed evidence shows that Defendant harbored Ms. Pena Canal in her apartment by providing her shelter.  Ms. Pena Canal testified that she had nowhere else to live in the United States, from which the jury could reasonably infer that keeping Ms. Pena Canal in Defendant's apartment facilitated her illegal stay in the United States.

Defendant also undertook several other steps to prevent Ms. Pena Canal's detection by immigration authorities.  For instance, Defendant limited Ms. Pena Canal's contacts outside of Defendant's family by forbidding her to communicate with other Spanish speakers[4] and to leave the home by herself.  In one instance, Defendant drove to the home of Claudia Fetzer, a Spanish-speaker with whom Ms. Pena Canal had communicated, to express her anger over the contact.  Defendant repeatedly called Ms. Fetzer later that night and the next morning to chastise her.  Ms. Fetzer felt so threatened by Defendant's anger over the incident that she filed a police report against Defendant.  Defendant's reaction to Ms. Pena Canal's unauthorized interaction with Ms. Fetzer also shows that Defendant was concerned about anybody discovering Ms. Pena Canal's illegal status.

Defendant also made efforts to isolate Ms. Pena Canal and prevent the government from detecting her.  Defendant restricted Ms. Pena Canal's movements by taking away her passport and Peruvian identification and destroying Ms. Pena Canal's return ticket to Peru.  Defendant also contributed to Ms. Pena Canal's isolation by destroying her radio and neglecting to teach her English.  Further,

---

[4] Ms. Pena Canal spoke only Spanish.

9

1  Defendant's repeated reminders to Ms. Pena Canal of her illegal
2  status also supports an inference that she was knowingly harboring
3  Ms. Pena Canal.  Taking this evidence together, a rational jury
4  could conclude that Defendant harbored Ms. Pena Cana to avoid
5  detection by immigration authorities.

6  IV.  Motion for a New Trial.

7       Under Federal Rule of Criminal Procedure 33, a district court
8  may vacate a judgment of conviction and grant a new trial "if the
9  interest of justice so requires."  Fed. R. Crim. P. 33.  "The court
10 is not obligated to view the evidence in the light most favorable
11 to the verdict and it is free to weigh the evidence and evaluate
12 for itself the credibility of the witnesses."  United States v.
13 Kellington, 217 F.3d 1084, 1097 (9th Cir. 2000).  However, a motion
14 for a new trial should be granted "only in exceptional cases in
15 which the evidence preponderates heavily against the verdict."
16 United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981).
17 Here, the interest of justice does not warrant a new trial.

18      Defendant argues that Ms. Pena Canal's testimony is entirely
19 incredible and, because her testimony provided the foundation of
20 the charges against Defendant, to avoid a miscarriage of justice,
21 the Court must grant a new trial.  Although Ms. Pena Canal's
22 testimony was central to Defendant's conviction, the "testimony of
23 the one witness, if believed, [is] sufficient to support [a]
24 conviction, and the resolution of any question as to [her]
25 credibility [is] properly entrusted to the jury."  United States v.
26 Gudino, 432 F.2d 433, 434 (9th Cir. 1970).  Here, Ms. Pena Canal
27 testified for two days and the jury was able to evaluate her
28 credibility.  The jury was made aware of Ms. Pena Canal's acts of

10

dishonesty and other evidence that could bear on her credibility, such as the government benefits she received and the civil lawsuit that she filed against Defendant.  In the end, the jury chose to credit her testimony.  Although the foundation of the government's case was Ms. Pena Canal's testimony, it presented several other pieces of supporting evidence: (1) many third party witnesses' testimony about their interactions with Defendant, (2) documents recovered from Defendant's home pursuant to a search warrant, (3) analysis of evidence recovered from Defendant's computer, (4) bank records and (5) State Department records, including visa applications submitted by Defendant.  In sum, the evidence against Defendant was credible and came from numerous and varied sources.  The convictions were the result of a fair trial.  Accordingly, the verdicts rendered were not a miscarriage of justice.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion for judgment of acquittal and for a new trial (Docket No. 99).

IT IS SO ORDERED.

Dated: 12/23/09

_____
CLAUDIA WILKEN
United States District Judge

11